This is a workmen's compensation case and, as in all such cases, our review is limited to questions of law and an examination of the evidence to determine if there is any legal evidence to support the findings of fact of the trial court.Farmers Gin Co. v. Rose, Ala.Civ.App., 374 So.2d 351 (1979). If there is any legal evidence to support the trial court's findings, its judgment must be affirmed. American TennisCourts, Inc. v. Hinton, Ala.Civ.App., 378 So.2d 235, cert.denied, Ala., 378 So.2d 239 (1979).
A careful review of the record reveals the following pertinent facts: Margaret E. *Page 137 
Floyd was employed by The Housing Authority of the City of Troy, Alabama and, in November 1977, while so employed, injured her back. Shortly thereafter Aetna Insurance Company, the Housing Authority's insurance carrier, began paying to Mrs. Floyd temporary total compensation benefits and her medical expenses. Aetna ceased paying the temporary total benefits for a brief time before April 1978 when it was informed that Mrs. Floyd was able to resume her employment.
Mrs. Floyd employed an attorney on April 5, 1978 and he requested Aetna to reinstate the temporary total benefit payments to her. Aetna commenced paying temporary total benefits to Mrs. Floyd after it determined that she was to undergo additional surgery for the injury incurred in November 1977. These payments were made through her attorney's office and continued until December 31, 1978 when they were stopped. Aetna terminated the temporary total benefits to Mrs. Floyd after receiving a letter from her doctor that she had reached maximum recovery and had a twenty percent permanent partial disability to the body as a whole.
On December 19, 1978 Aetna wrote Floyd's attorney a letter offering to settle the claim based on the doctor's report. Another settlement letter followed on January 12, 1979. At this time Floyd's attorney said he wanted another doctor to examine his client and would contact Aetna later. He never did.
On February 9 and 28, 1979 Aetna made telephone calls to Floyd's attorney but he was not contacted. On March 8, 1979 Aetna wrote another letter to Floyd's attorney concerning settlement and requesting a reply. No reply was made. Aetna's final offer was by a letter dated March 29, 1979. Aetna says no reply to this letter was received.
At no time during the many letters and telephone contacts was the statute of limitations mentioned, although there is evidence that Floyd's attorney after being informed why the payments were stopped said he would file suit if temporary total benefit payments were not resumed. The date of the last temporary total benefit payment to Floyd was December 31, 1978 and on December 31, 1979, the anniversary date of the last payment, no action had been filed. In fact suit was not filed until January 14, 1980. On March 7, 1980 the Housing Authority filed a motion to dismiss or, in the alternative, a motion for summary judgment alleging that the statute of limitation had run and the action should be dismissed. After a hearing where testimony was taken and other evidence offered, the trial court dismissed the action because it was filed too late. This appeal is from that order.
Floyd says here that Aetna is estopped or due to its fraudulent misconduct cannot assert the one year statute of limitation set out in § 25-5-80, Code of Alabama 1975. Section25-5-80 provides in part as follows:
 In case of a personal injury, all claims for compensation under this article and article 2 of this chapter shall be forever barred unless within one year after the accident the parties shall have agreed upon the compensation payable under this article and article 2 of this chapter or unless within one year after the accident one of the parties shall have filed a verified complaint as provided in section 25-5-88. . . . Where, however, payments of compensation have been made in any case, said limitations shall not take effect until the expiration of one year from the time of making the last payment.
In support of her contention, Floyd argues that she had an agreement with Aetna that temporary total benefits would be paid for an indefinite period of time and that Aetna terminated the temporary total benefit payments on December 31, 1978 without giving her or her attorney any notice that such action would take place. The violation of the agreement by stopping the temporary total benefits payments, especially without any notice, brings such conduct on the part of Aetna within the purview of Dorsey v. United States Pipe Foundry Co., Ala.,353 So.2d 800 (1977). The pertinent rule from Dorsey, is as follows: *Page 138 
 [W]hen acts are done by the employer which lead the employee to believe that liability under the statute is admitted and will not be contested, or where the acts of the employer either falsely misrepresent to the employee or fraudulently conceal from him the truth of the facts upon which the liability of the employer depends, the running of the statute of limitations may be tolled, and it is immaterial whether the employee relies upon actual fraud or mere estoppel.
We have carefully examined the evidence in the case at bar and have been unable to find any facts that would bring it within the Dorsey rule. Aetna did nothing to prevent Floyd from filing suit. Neither did Aetna lead Floyd to believe liability was admitted and would not be contested. On the contrary, Aetna terminated the temporary benefits payments to Floyd when it received a copy of a letter that was sent to her by her doctor stating that she had reached maximum recovery and had a twenty percent permanent disability to the body as a whole. Such termination was in accord with § 25-5-57 (a)(1) and Speigner v.McGhee, 55 Ala. App. 384, 316 So.2d 215, cert. denied, 294 Ala. 769, 316 So.2d 221 (1975).
It is undisputed that Aetna did not specifically notify Mrs. Floyd or her attorney that the temporary total benefits were being terminated as of December 31, 1978, but the benefit payments checks were being sent to Mrs. Floyd through her attorney's office and he had requested that she acknowledge receipt of them. Surely it would not be unreasonable to expect either Mrs. Floyd or her attorney to notice the cessation of the benefits payments sometime during the following year. Furthermore, Aetna's claims manager testified that he told Floyd's attorney on the telephone when he offered to settle that his client's temporary total benefits had been terminated, and Mrs. Floyd's attorney replied that suit would be filed if the temporary total benefits were not reinstated. Under these circumstances we must assume that the attorney was aware of the period of limitation within which suit must be filed. SeeKuntsman v. Mirizzi, 234 Cal.App.2d 753, 44 Cal.Rptr. 707
(Dist.Ct.App. 1965).
We would also note that the evidence is clear that Aetna made all of the offers to settle with no reply from Mrs. Floyd's attorney. This attorney did tell Aetna that he wished to obtain an independent medical examination of his client and would get in touch with Aetna after such examination. He never did.
Offers to compromise or settle a disputed claim will not be received as an admission of the party making the offer. LanghamSmall Motors v. Thomas, 390 So.2d 1055 (Ala.Civ.App. 1980),cert. denied, 390 So.2d 1055 (Ala. 1980). We also said inLangham that it was important in workmen's compensation cases to explore and reach, if possible, extrajudicial settlements.
The evidence fully supports a finding that Aetna did nothing which would lead Floyd to believe liability was admitted and would not be contested nor did Aetna do or say anything that would lead Floyd to believe that it was unnecessary to file suit within one year after the last temporary total payment.
Floyd says, however, that she had an agreement with Aetna that temporary total benefits would be paid indefinitely and Aetna breached this agreement without notice.
To begin, we are not convinced that Floyd had an agreement with Aetna to pay temporary total benefits for any particular length of time. The so-called agreement is supposed to be contained in a letter sent to Troy Housing Authority on April 5, 1978 by Floyd's attorney. The most that can be said for this letter is that the employer was advised that the employee had been injured on the job and that she was to undergo surgery for the injury. The payment of temporary total benefits was requested to be made or suit would be filed. Temporary total benefits were paid regularly until December 31, 1978, when Aetna was advised by Floyd's doctor that Floyd had reached maximum recovery. At this time payments were terminated. *Page 139 
We conclude there is no basis in the evidence for a finding that Aetna had agreed to pay temporary total benefits to Floyd for an indefinite period of time. The most that can be said for Aetna's response to Floyd's April 5, 1978 letter is that Aetna undertook to pay Floyd temporary total benefits until she reached maximum recovery or until the expiration of three hundred weeks, whichever occurred first. See § 25-5-57 (a)(1), Code of Alabama 1975. This Aetna did.
As to Mrs. Floyd's contention that Aetna should have notified her that it was terminating the temporary total benefit payments on December 31, 1978, we observe that the evidence suggests that Mrs. Floyd's attorney was informed by Aetna's claims manager of the reason the payments were being stopped,i.e., his client had reached maximum recovery and had a twenty percent permanent partial disability. Furthermore, the workmen's compensation law does not require notice of termination of temporary total benefits before they can be stopped. See § 25-5-57 (a)(1), Code of Alabama 1975; Speignerv. McGhee, supra. The cessation of payments should be sufficient notice that the temporary total benefits have been terminated.
Therefore, we conclude that Aetna was not estopped to assert nor had it engaged in any fraudulent conduct which would prevent it from asserting the one year statute of limitation; hence the trial court properly dismissed Floyd's claim for workmen's compensation benefits because it came too late.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.